1  SAMANTHA BENNETT (NYBN 5132063)
   EVAN ROSE (CABN 253478)
2  ALYSSA J. WU (CABN 339651)
3  Federal Trade Commission
   Western Region San Francisco
4  90 Seventh St., Suite 14-300
   San Francisco, CA 94103
5  Phone: (415) 848-5100
   Email: sbennett@ftc.gov
6

7  Attorneys for Plaintiff
   Federal Trade Commission
8

9              **UNITED STATES DISTRICT COURT**
10            **NORTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  FEDERAL TRADE COMMISSION, | Case No. 3:26-cv-00333 |
| 13       Plaintiff, | |
| 14            v. | **COMPLAINT FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, CIVIL PENALTY JUDGMENT, AND OTHER RELIEF** |
| 15  JUSTANSWER LLC, an Idaho limited liability company; and | |
| 16 | |
| 17  ANDREW "ANDY" KURTZIG, individually and as an officer of JUSTANSWER LLC, | |
| 18       Defendants. | |

19

20        Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint

21  alleges:

22        1.    The FTC brings this action for Defendants' violations of Section 5(a) of the

23  Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), and the Restore Online

24  Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401 *et seq.*  For these violations, the FTC

25  seeks relief, including a permanent injunction, monetary relief, civil penalties, and other relief,

26  pursuant to Sections 5(m)(1)(A), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(m)(1)(A), 53(b),

27  and 57b, and Section 5 of ROSCA, 15 U.S.C. § 8404.

28

## SUMMARY OF THE CASE

2.      Defendant JustAnswer LLC ("JustAnswer") operates an online question-and-answer service that connects consumers with experts in a wide variety of subjects whose credentials have been verified by JustAnswer ("Experts").  Defendant Andrew "Andy" Kurtzig ("Kurtzig") is CEO of JustAnswer.  He has been directly involved in the JustAnswer business practices described below.

3.      Defendants deceive consumers into enrolling in a monthly recurring subscription by claiming that consumers can "join" JustAnswer and get access to Experts for a nominal fee (either $1 or $5, depending on the advertisement).  In reality, consumers cannot join JustAnswer for $1 or $5.  After consumers enter their credit card information to pay the nominal "join" fee, Defendants simultaneously charge them a subscription fee that has ranged between $28 and $125.  Defendants then continue to charge the subscription fee every month until the consumer cancels their subscription.

4.      While Defendants provide limited information about the required monthly subscription on their website, Defendants do not present it clearly and conspicuously.  As a result, hundreds of thousands of consumers have provided their credit card information to Defendants without affirmatively consenting to enroll in an ongoing monthly subscription and pay the monthly fee.

5.      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮

6.      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮

7.      Even though Defendants know their practices cause rampant consumer injury, they continue to falsely represent to consumers that they can join JustAnswer for just the cost of the $1 or $5 join fee.

## JURISDICTION

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355 because this case is brought by an agency of the United States for claims arising under federal laws regulating commerce and seeks the recovery or enforcement of a penalty.

## VENUE

9.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d), and 1395(a), and 15 U.S.C. § 53(b).

## DIVISIONAL ASSIGNMENT

10.      Pursuant to Rule 3-2(c) of the Civil Local Rules of the Northern District of California, there is a sufficient basis for assigning this action to the San Francisco Division or the Oakland Division.  A substantial part of the events giving rise to the claims occurred in San Francisco County and Marin County.  *See* Civ. L.R. 3-2(d).  Until at least July 2023, Defendant JustAnswer LLC's headquarters and principal place of business was located in San Francisco County, and Defendant Andrew Kurtzig resides in Marin County.

## PLAINTIFF

11.      The FTC is an agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces ROSCA, 15 U.S.C. §§ 8401–8405, which prohibits the sale of goods or services on the Internet through negative option marketing without meeting certain requirements for disclosure, consent, and cancellation.  A negative option is an offer in which the seller treats a consumer's silence— *i.e.*, their failure to reject an offer or cancel an agreement—as consent to be charged for goods and services.  16 C.F.R. § 310.2(w).

**DEFENDANTS**

**A. Corporate Defendant**

12.     Defendant JustAnswer LLC is an Idaho limited liability company.  At all times material to this Complaint until at least July 2023, JustAnswer's headquarters and principal place of business was located at 38 Keyes Avenue, Suite 150, San Francisco, California.  JustAnswer now operates virtually in the United States but lists its principal place of business as 440 North Barranca Avenue, #7508, Covina, California.

13.     At all times relevant to this Complaint, acting alone or in concert with others, JustAnswer has advertised, marketed, distributed, or sold its online question-and-answer service to consumers in this District and throughout the United States.

**B. Individual Defendant**

14.     Defendant Andrew Kurtzig is the founder and Chief Executive Officer of Defendant JustAnswer.  Kurtzig resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

15.     At all times relevant to this Complaint, acting alone or in concert with others, Kurtzig has formulated, directed, controlled, had authority to control, or participated in the acts and practices of JustAnswer, including the acts and practices described in this Complaint.

16.     Kurtzig has directly participated in the unlawful acts and practices set forth in this Complaint including, among other things: (a) reviewing, approving, or declining proposed changes to the content of the JustAnswer website, including all text related to the descriptions and cost of the service; (b) requesting and reviewing website tests relating to cost representations and fee disclosures; and (c) reviewing employee feedback and reports on consumer complaints.

17.     Kurtzig knows, and has known at all times relevant to this Complaint, that JustAnswer's fee representations are misleading and that consumers have been harmed as a result.  Among other things: ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

1 ███████████████████████████████████████

2 ████████████████████████████████████████████

3 ███████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████████████████████████████

6 ███████████████████████████████████████████

7 ███████████████████████████████████████

8 ██████████████████████████████████████████████

9 ██████████████████████████████████████████████

10 █████████████████████████████████████████████

11 ████████████████████████

**COMMERCE**

18.     At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**DEFENDANTS' BUSINESS ACTIVITIES**

**A. JustAnswer Surreptitiously Enrolls Consumers in a Paid Monthly Subscription to Use Its Question-and-Answer Service**

19.     Defendant JustAnswer operates an online platform that offers consumers the opportunity to ask questions and receive answers from Experts in various subject areas through online chats or phone calls.  The allegations below describe the company's business practices from at least January 1, 2022.

20.     Throughout the relevant time period, ████████████ consumers have joined the JustAnswer question-and-answer service via a three-step search ad purchase flow.  First, they click on a JustAnswer search engine ad related to the topic of their question.  Second, they are taken to a landing page specific to their search topic on JustAnswer.com or one of hundreds of additional domains owned by JustAnswer (e.g., AskAVeterinarianOnline.com,

AskWomensHealth.com, AskALawyerOnCall.com, and Pearl.com).  Third, they are taken to the JustAnswer payment form where they enter their payment information.

21.    Consumers also may sign up directly on the JustAnswer.com homepage, rather than a JustAnswer.com landing page, or in the JustAnswer mobile app, ███████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████ consumers who begin at the JustAnswer.com homepage or mobile app are routed to a different purchase flow than those who click on a search ad.

22.    Through its search ad purchase flow, JustAnswer misleads consumers about the cost to join JustAnswer's question-and-answer service and omits material information about the recurring subscription.  The following subsections address each step of the search ad purchase flow in turn.  Complaint Attachments A through J are representative of what a consumer would have seen in the search ad purchase flow since at least January 1, 2022.

### 1.    Search Ads

23.    Consumers searching for answers to a question online may come across a JustAnswer search ad related to the topic of their question.  For example, when searching for "ask a vet online" on Google.com, a consumer might find a sponsored ad for JustAnswer's veterinarian Experts on the search results page.  *See* Figs. A and B below.  JustAnswer does not disclose its fee structure or required monthly subscription in its search advertisements.



*Figure A. JustAnswer Sponsored Google Ads (March 2025)*



*Figure B. JustAnswer Sponsored Google Ad (March 2025)*

### 2.    *Landing Pages*

24.    JustAnswer's search ads link to specialized landing pages promoting JustAnswer's Expert services within a specific category of information related to the consumer's search. These JustAnswer landing pages can be accessed at a website address such as www.justanswer.com/sip/veterinary or www.justanswer.com/sip/cars, or through a specialized domain such as www.askaveterinarianonline.com/lp.

25.    Since at least January 1, 2022, consumers who click on one of JustAnswer's search ad landing pages using a desktop computer will see a webpage similar to Figure C below.

*Figure C. Screenshot of JustAnswer Landing Page (desktop) (March 2025)*

26.     As shown in Figure C above, the left side of the desktop landing page shows a large image relevant to the specific Expert category (here, the veterinary category), with text superimposed over the image.  The right-hand side of the screen shows a chat box, where JustAnswer's chatbot gathers basic information about the consumer's question.  The chatbot is described as an "assistant" to the Expert (for example, a "Veterinarian's Assistant" in Figures C above and D below) and is typically referred to as "Pearl."  JustAnswer requires that consumers interact with Pearl in order to use JustAnswer's question-and-answer service.  The chat box remains on the right side of the screen even if the consumer scrolls down the page.

27.     When a consumer first accesses the mobile version of JustAnswer's search ad landing page, the entirety of the screen is filled with the chat box, as shown in Figure D below.



*Figure D. Screenshot of JustAnswer Landing Page (mobile) (August 2025)*

28.     When a consumer reaches the landing page, Pearl prompts them to share information about their question or concern.

29.     Since at least January 1, 2022, after soliciting basic information from the consumer, on both the desktop and mobile versions of the landing page, Pearl tells the consumer that they will be sent to a form where they can join JustAnswer's question-and-answer service for either $1 or $5, depending on the cost of the join fee at the time.  For example, as seen in Figure E below, Pearl states, "OK, got it. Here's a secure form to join JustAnswer for $5 (fully-refundable). While you're filling this out, I'll tell the Veterinarian about your situation and then connect you two."



*Figure E. Screenshot of JustAnswer Landing Page (desktop) (March 2025)*

30.     Based on Pearl's representation, a reasonable consumer at this step in the purchase flow would be under the false impression that they would be able to use the JustAnswer service and receive an answer to their question from an Expert for $1 or $5.  In reality, consumers cannot join JustAnswer's question-and-answer service for $1 or $5.  JustAnswer charges consumers both the $1 or $5 join fee *and* a significantly higher monthly subscription fee immediately at sign-up.  JustAnswer will continue charging consumers the recurring subscription fee every month until they cancel.

31.     The cost of the monthly subscription fee has varied depending on the Expert category advertised in the purchase flow.  For example, in October 2024, JustAnswer charged a $47 subscription fee for the mechanics category and a $79 subscription fee for the legal category. Regardless of the monthly subscription fee JustAnswer charged, JustAnswer permitted consumers to ask questions of Experts from any category.  As of at least November 2025, JustAnswer claims to charge new customers a monthly subscription fee of $65 for each Expert category.

32.     At times since January 1, 2022, JustAnswer has referred to the monthly subscription fee on the landing page, as shown in Attachment G.  On these iterations of the landing page, however, JustAnswer has placed the fee information halfway down the page, where consumers are unlikely to see it.

33.     Consumers do not have to scroll down to interact with the Pearl chatbot or to make a purchase. ███████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████████████

34.     As of at least mid-2024, JustAnswer removed even this information about the subscription fee, which consumers were unlikely to see, from landing pages that most consumers visit.

### 3.      Payment Form

35.     On desktop versions of JustAnswer's websites, after Pearl's final message, a credit card payment form appears on the screen.  *See* Fig. F below.

//



*Figure F. Screenshot of JustAnswer Payment Form (desktop) (March 2025)*

36.     As seen in Figure F above, JustAnswer leaves Pearl's final message—which includes the false claim that the consumer can "join JustAnswer for $5 (fully-refundable)"—visible to the right as consumers enter their email address and payment info. Below the form is a large, brightly colored button labeled "Confirm now."

37.     Between the form and the "Confirm now" button is a block of text that reads:

> By clicking "Confirm now" I agree to the <u>Terms of Service</u>, <u>Privacy Policy</u>, to be charged the one-time join fee, and a **$39 monthly membership fee** today and each month until I cancel. I can cancel via My Account to avoid future charges. Transactions may be processed by a third party.

38.     JustAnswer includes this language in substantially smaller print than almost any other text on the page—including the "join JustAnswer for $5" claim in the Pearl chat. While the monthly subscription fee is bolded, it is still difficult to see in comparison to the much larger text throughout the credit card payment form. Consumers are therefore unlikely to notice the small print. And for the consumers who do notice, they are unlikely to understand the disclosure

1  language because it flatly contradicts the prominent express representation that they can join for

2  $5.

3      39.     The payment form on mobile devices populates directly below the Pearl chat,

4  rather than to the left of the chat, as shown in Figure G below.  The mobile page scrolls

5  automatically so the payment form appears below Pearl's final message.  The block of text

6  between the credit card fields and the large red "Confirm now" button reads similarly to the

7  desktop version.  Since at least mid-2024, this fine-print disclosure typically includes the only

8  fee information on the page.



*Figure G. Screenshot of JustAnswer Payment Form (mobile) (August 2025)*

40.    The "Terms of Service" page linked in the block of text on both desktop and mobile versions includes information about JustAnswer's pricing and membership, but consumers are not required to click the link to complete the sign-up process.  Even if a consumer did click the "Terms of Service" link, the terms are dense and lengthy.  The consumer would have to scroll nearly halfway down the Terms of Service page to locate information about subscription fees.

41.    JustAnswer's payment form has changed since January 1, 2022.  *See* Attachments B, D, F, H, J.  For example, as shown in Attachment J, one prior iteration of the payment form (in use as of June 2022) included a checkbox next to a block of text in small print that referred to a "membership" and "charges" but did not include the subscription fee.  The checkbox was pre-checked, so consumers did not have to click it to continue with their sign-up.

42.    Another iteration of the payment form (in use beginning in approximately late 2022) has included the monthly fee disclosure in a subheading above the credit card fields, as shown in Attachment H.  By approximately mid-2024, JustAnswer had moved the monthly subscription fee to the fine print disclaimer above the "Confirm now" button across most of its payment forms in the search ad purchase flow, as shown in Figures F and G above.  *See also* Attachments B, D, F.

43.    Because JustAnswer represents to consumers that they can join JustAnswer's question-and-answer service for $1 or $5, without clearly and conspicuously disclosing that they will be (a) enrolled in a recurring monthly subscription; and (b) charged the initial monthly fee (ranging from $28 to $125 per month) at the same time as the join fee, JustAnswer has misled hundreds of thousands of consumers through its sign-up process.

**B. JustAnswer Has Generated a Massive Volume of Consumer Complaints and Payment Disputes**

44.    Many consumers have reported that they joined JustAnswer believing that their question would be answered for just $1 or $5. ███████████████████ ███████████████████████████ and many have complained that they did not know that JustAnswer was enrolling them in a recurring monthly subscription.

45.     Many consumers also have complained that they did not know they would be charged for the first month of membership at the time of sign-up.

46.     In addition, many consumers have filed disputes with their banks or credit card companies related to the recurring subscription charges.

       **1.**    ***Hundreds of Thousands of Consumers Have Complained to JustAnswer That They Thought They Were Going to Pay Only $1 or $5 to Get Their Question Answered***

47.     JustAnswer receives complaints directly from consumers by phone and email and through chats with Pearl.  Consumers also post complaints on third-party review sites and file complaints with the Better Business Bureau.

48.     Many consumers complaining to JustAnswer have expressed confusion because they thought they were paying only the join fee to get one question answered, but later saw the recurring charges on their credit card account.  For example:

49.     Other consumers have explicitly criticized JustAnswer's pricing practices and expressed the view that the company had scammed them.  For example:

a. ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████████
████

b. ████████████████████████████████████
█████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████
███████████████████

50.     █████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████

51.     █████████████████████████████████████
████████████████████████████████████
██████████████████████████████████████████████

52.

53.

54.

55.

56.

**2.    *Consumers Have Requested Refunds from JustAnswer and Disputed Charges at a High Rate***

57.    Consumers have frequently sought a refund from JustAnswer after realizing JustAnswer had enrolled them in a monthly subscription when they joined.

58.

59.    Consumers often have sought a refund by disputing the charge with their credit cards or banks.  In many of these instances, consumers have disputed a charge from JustAnswer without first submitting a complaint to JustAnswer.

60.

61.

62.

63.

64. ███████████████████████████████████████
████████████████████

65. ██████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████████
█████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████

**C. Defendants Know that JustAnswer's Purchase Flow Misleads Consumers but Have Refused to Change the Purchase Flow to Prevent Consumer Injury**

66.     JustAnswer and Kurtzig are aware that the company's $1 or $5 join fee representation is misleading consumers, and that JustAnswer's disclosures about the subscription do not correct this misleading representation or adequately disclose JustAnswer's pricing and subscription terms.  In addition to receiving significant numbers of consumer complaints, as described above, JustAnswer has conducted website testing and marketing research showing that JustAnswer misleads consumers with its purchase flow.  Kurtzig directly participated in these efforts.

67.     Despite their knowledge of rampant consumer deception, however, JustAnswer and Kurtzig have chosen not to change the JustAnswer purchase flow to prevent this deception or the resulting consumer injury.  In fact, over time, JustAnswer has made the purchase flow more deceptive by reducing the amount of information in the purchase flow about its pricing and subscription terms.

*1.    JustAnswer's Website Testing and Marketing Research Show That JustAnswer Misleads Consumers with Its Purchase Flow*

68.     ██████████████████████████████████████████
████████████████████████████████████████

69.

70.

71.

72.

73.

74.

75.

[Text redacted]

### 2. Defendants Have Consistently Refused to Improve the Purchase Flow to Prevent Consumer Deception and Injury

76. JustAnswer has made iterative changes to its purchase flow since it first began charging consumers the monthly subscription fee immediately at sign-up, but none have resolved the company's deceptive practices.

77. On the contrary, JustAnswer has made changes to its purchase flow that make it more likely to mislead consumers. For example, as noted above, some past versions of the landing pages included a reference to a monthly fee, which JustAnswer placed far down the page, [redacted] As of at least mid-2024, JustAnswer removed even this information about the subscription fee from the landing pages most consumers visit.

78. Similarly, as noted above, in approximately mid-2024, JustAnswer further concealed information about the monthly subscription fee on the payment forms most consumers visit. Previously, the payment form included a subheading that read, "Unlimited conversations—one-time $[X] join fee and **$[X]/month**. Cancel anytime." *See* Fig. H below (red arrow added to indicate the disclosure language). In the revised version, JustAnswer removed this subheading and moved the sole reference to the monthly subscription fee to the fine print below the credit card fields. *See* Fig. I below.

//



*Figure H. Screenshot of JustAnswer*

*Payment Form (October 2022)*

*Figure I. Screenshot of JustAnswer*

*Payment Form (March 2025)*

79.     Even when JustAnswer has included subscription fee information on the landing page, or in larger print on the payment form, consumers have complained to the company in consistently high numbers that they did not know that JustAnswer would enroll them in a subscription.  The complaints show that JustAnswer's disclosures have not been sufficiently clear and conspicuous, especially in light of JustAnswer's contradictory claim that consumers can "join JustAnswer" for $1 or $5.

80.     Kurtzig and JustAnswer know that the company is deceiving consumers, yet have refused to make changes to comply with the law.

81.     Kurtzig and JustAnswer have significant experience with negative option marketing and are aware of the laws that apply to this form of marketing, such as the FTC Act and ROSCA.  Under Kurtzig's control and with his direct participation, JustAnswer has engaged in negative option marketing for twenty-one years.  The company has extensive legal resources, including in-house and outside counsel with expertise in the FTC Act and ROSCA.  Kurtzig and JustAnswer were aware of significant government scrutiny into the company's subscription enrollment and pricing practices, including a Civil Investigative Demand issued to JustAnswer in February 2023 seeking documents and information pertaining to, among other things, potential

1  violations of the FTC Act and ROSCA.  Nevertheless, JustAnswer continues to make the false

2  claim that consumers can join JustAnswer's question-and-answer service for $1 or $5 and omit

3  clear and conspicuous disclosures about the monthly subscription fee and the recurring

4  subscription commitment.

5  82.    Based on the facts and violations of law alleged in this Complaint, the FTC has

6  reason to believe that Defendants are violating or are about to violate laws enforced by the

7  Commission.

8  **VIOLATION OF THE FTC ACT**

9  83.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts

10  or practices in or affecting commerce."

11  84.    Misrepresentations or deceptive omissions of material fact constitute deceptive

12  acts or practices prohibited by Section 5(a) of the FTC Act.

13  **COUNT I**

14  **Misrepresentation That Consumers Can Join JustAnswer's Question-and-Answer Service**

15  **by Paying a Nominal One-Time Fee**

16  85.    In numerous instances in connection with the advertising, marketing, promotion,

17  or offering for sale of its online question-and-answer service, as described in Paragraphs 20 to 81

18  above, Defendants represent, directly or indirectly, expressly or by implication, that consumers

19  can join JustAnswer's question-and-answer service and have their question answered by paying a

20  nominal one-time fee, such as $1 or $5.

21  86.    In fact, consumers cannot join JustAnswer's question-and-answer service and

22  have their question answered by paying a nominal one-time fee.  Consumers must pay both the

23  one-time "join" fee and a subscription fee that has ranged between $28 and $125 before they can

24  use JustAnswer's service.

25  87.    Therefore, Defendants' representation as described in Paragraph 85 is false or

26  misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act,

27  15 U.S.C. § 45(a).

28

## VIOLATIONS OF THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT

88.     In 2010, Congress passed the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401–8405, which became effective on December 29, 2010.  Congress passed ROSCA because "[c]onsumer confidence is essential to the growth of online commerce.  To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business."  Section 2 of ROSCA, 15 U.S.C. § 8401.

89.     Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(w), unless the seller: (a) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; (b) obtains the consumer's express informed consent before making the charge; and (c) provides simple mechanisms to stop recurring charges.  *See* 15 U.S.C. § 8403.

90.     The TSR defines a negative option feature as: "in an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."  16 C.F.R. § 310.2(w).

91.     Defendants have sold a subscription service, in transactions effected on the internet, through a negative option feature as defined by the TSR, 16 C.F.R. § 310.2(w).

92.     Pursuant to Section 5(a) of ROSCA, 15 U.S.C. § 8404(a), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of ROSCA shall be treated as a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a, and therefore a violation of ROSCA constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

//

1

## COUNT II

2

### Failure to Clearly and Conspicuously Disclose Material Terms

3       93.     In numerous instances, in connection with charging consumers for goods or

4   services sold in transactions effected on the Internet through a negative option feature, as

5   described in Paragraphs 20 to 81 above, Defendants failed to clearly and conspicuously disclose

6   all material terms of the transaction, including the price of using the JustAnswer question-and-

7   answer service, its auto-renewal provision, and the timing of the first subscription fee, before

8   obtaining the consumer's billing information.

9       94.     Accordingly, consumers joined JustAnswer's question-and-answer service

10  without knowing that JustAnswer would enroll them in a costly recurring subscription.

11      95.     Defendants' acts or practices as set forth above are violations of Section 4(1) of

12  ROSCA, 15 U.S.C. § 8403(1), and therefore constitute unfair or deceptive acts or practices in

13  violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

14

## COUNT III

15

### Failure to Obtain Express Informed Consent

16      96.     In numerous instances, in connection with charging consumers for goods or

17  services sold in transactions effected on the Internet through a negative option feature, as

18  described in Paragraphs 20 to 81 above, Defendants failed to obtain the consumer's express

19  informed consent before charging the consumer's credit card, debit card, bank account, or other

20  financial account for the transaction.

21      97.     Defendants' acts or practices as set forth above are violations of Section 4(2) of

22  ROSCA, 15 U.S.C. § 8403(2), and therefore constitute unfair or deceptive acts or practices in

23  violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

24

## CONSUMER INJURY

25      98.     Consumers are suffering, have suffered, and will continue to suffer substantial

26  injury as a result of Defendants' violations of the FTC Act and ROSCA.  Absent injunctive relief

27  by this Court, Defendant is likely to continue to injure consumers and harm the public interest.

28

1

## CIVIL PENALTIES

2    99.    Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), authorizes this

3  Court to award civil penalties for each violation of ROSCA.

4    100.    Defendants violated ROSCA with actual knowledge or knowledge fairly implied

5  on the basis of objective circumstances, as required by Section 5(m)(1)(A) of the FTC Act, 15

6  U.S.C. § 45(m)(1)(A).

7

## PRAYER FOR RELIEF

8    Wherefore, the FTC requests that the Court:

9    A.    Enter a permanent injunction to prevent future violations of the FTC Act and

10  ROSCA by Defendants;

11    B.    Award monetary and other relief within the Court's power to grant;

12    C.    Impose civil penalties on Defendants for each violation of ROSCA; and

13    D.    Award any additional relief as the Court determines to be just and proper.

14

15  Dated: <u>January 13, 2026          </u>          Respectfully submitted,

16

17                                    <u>/s/ *Samantha Bennett*          </u>

18                                    SAMANTHA BENNETT
                                      NY Bar No. 5132063

19                                    EVAN ROSE
                                      Cal. Bar No. 253478

20                                    ALYSSA J. WU
                                      Cal. Bar No. 339651

21                                    Attorneys

22                                    Federal Trade Commission
                                      Western Region San Francisco

23                                    90 Seventh St., Suite 14-300
                                      San Francisco, CA 94103

24                                    Phone: (415) 848-5100
                                      Email: sbennett@ftc.gov, erose@ftc.gov,

25                                    awu1@ftc.gov

26
                                      Attorneys for Plaintiff

27                                    FEDERAL TRADE COMMISSION

28

# ATTACHMENT A

**ATTACHMENT A**

JustAnswer Veterinary Category Landing Page
(Mobile version with scrolling – August 2025)




2





3












Source: FTC web capture

# ATTACHMENT B

**ATTACHMENT B**

JustAnswer Veterinary Category Payment Form
(Mobile version, following landing page depicted in Attachment A – August 2025)



Source: FTC web capture

# ATTACHMENT C

**ATTACHMENT C**

JustAnswer Veterinary Category Landing Page
(Desktop version with scrolling – March 2025)

















Source: FTC web capture

# ATTACHMENT D

**ATTACHMENT D**

JustAnswer Veterinary Category Payment Form
(Desktop version, following landing page depicted in Attachment C – March 2025)



Source: FTC web capture

# ATTACHMENT E

**ATTACHMENT E**

JustAnswer Veterinary Category Landing Page
(Desktop version with scrolling – December 2024)















Source: FTC web capture

# ATTACHMENT F

**ATTACHMENT F**

JustAnswer Veterinary Category Payment Form
(Desktop version, following landing page depicted in Attachment E – December 2024)





Source: FTC web capture

22

# ATTACHMENT G

**ATTACHMENT G**

JustAnswer Veterinary Category Landing Page
(Desktop version with scrolling – January 2023)















Source: JustAnswer Veterinary Landing Page, Internet Archive, archived January 10, 2023, *available at* https://web.archive.org/web/20230110192319/https://www.justanswer.com/sip/veterinary/ (last accessed Sept. 8, 2025)

# ATTACHMENT H

**ATTACHMENT H**

JustAnswer Payment Form
(Desktop version – October 2022)



Source: JustAnswer

# ATTACHMENT I

**ATTACHMENT I**

JustAnswer Landing Page
(Desktop version with scrolling – June 2022)















Source: FTC web capture

# ATTACHMENT J

**ATTACHMENT J**

JustAnswer Appliance Category Payment Form
(Desktop version, following landing page depicted in Attachment I – June 2022)



Source: FTC web capture

35