MANATT, PHELPS & PHILLIPS, LLP

Kevin Dwight (Bar No. CA 239476)
KDwight@manatt.com
203 Redwood Shores Parkway, Suite 125
Redwood City, CA 94065
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

Bezalel Stern (Bar No. DC 1025745) (admitted *pro hac vice*)
BStern@manatt.com
Joshua N. Drian (Bar No. VA 82061) (*pro hac vice* to be filed)
JDrian@manatt.com
1050 Connecticut Ave. NW, Suite 600
Washington, D.C. 20036
Telephone: (202) 585-6500
Facsimile: (202) 585-6600

*Counsel for Defendant JustAnswer LLC*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JUSTANSWER LLC, *et al.*<br><br>Defendants. | Case No. 3:26-cv-00333-JD<br><br>**DEFENDANT JUSTANSWER LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>[Filed concurrently with:<br>1. [Proposed] Order<br>2. Administrative Motion to Seal<br>3. [Proposed] Order to Permanently Seal<br>4. Request for Judicial Notice<br>5. Declaration of Kevin Dwight<br>6. [Proposed] Order to Take Judicial Notice]<br><br>Complaint Filed:  January 13, 2026<br><br>Hearing Requested: April 23, 2026 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Thursday, April 23, 2026 at 10:00am, or as soon thereafter as this matter may be heard before the above titled court, before the Honorable James Donato, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, in Courtroom 11, Defendant JustAnswer LLC ("JustAnswer") will, and hereby does, move for an order dismissing Plaintiff Federal Trade Commission's ("FTC") Complaint ("Complaint" or "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is made, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that the Complaint fails to state a claim under the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401, *et seq.*, Section 5 of the FTC Act, 15 U.S.C. § 45, or Section 13 of the FTC Act, 15 U.S.C. § 5. Further, the FTC's claims, which sound in fraud, are not pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b). The FTC's demand for monetary relief in the form of civil penalties should be dismissed because JustAnswer lacked reasonable notice that ROSCA could apply to its proper flows or that its website pages otherwise violated ROSCA or were unlawful. Because JustAnswer is compliant with ROSCA and does not violate Section 5, the FTC's demand for injunctive relief must also be dismissed.

This Motion is made upon this Notice of Motion, the supporting Memorandum of Points and Authorities, the accompanying Request for Judicial Notice ("RJN"), Declaration of Kevin Dwight in support, the Administrative Motion to Seal, all papers on file with the Court in this action, and such other evidence and argument as the Court may receive in connection with this Motion.

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

LEGAL STANDARDS .........................................................................................................3

ARGUMENT .........................................................................................................................3

I.     THE FTC FAILS TO PLEAD CLAIMS AS TO WEBSITE PAGES NOT IDENTIFIED IN THE COMPLAINT ...................................................................................................3

II.    THE FTC FAILS TO STATE A CLAIM THAT DEFENDANTS VIOLATED ROSCA .............4

       A.    The FTC Does Not Plausibly Allege Defendants Failed to Clearly and Conspicuously Disclose Key Terms Before Obtaining Billing Information (Count II)...................................................................................................................4

             1.    The Visual Aspects of JustAnswer's Disclosures Are Easily Understandable and Readily Noticeable to a Reasonable Consumer .....................5

             2.    Context Confirms JustAnswer's Disclosures Are Clear and Conspicuous .............8

       B.    The FTC Does Not Adequately Allege that Defendants Failed to Obtain Consumers' Express Informed Consent Before Charging Them (Count III) .....................8

       C.    That JustAnswer's Payment Pages are Clear and Conspicuous and Obtain Express Informed Consent Is Consistent with this Court's Prior Ruling ........................................10

       D.    The FTC Does Not Have Authority to Rewrite ROSCA......................................................10

III.   THE FTC'S SECTION 5 COUNT FAILS TO PLAUSIBLY ALLEGE DECEPTION (COUNT I)...........................................................................................................................12

IV.    THE FTC FAILS TO PLAUSIBLY ALLEGE THAT CIVIL PENALTIES ARE WARRANTED ......................................................................................................................14

V.     THE FTC IS NOT ENTITLED TO INJUNCTIVE RELIEF .......................................................15

CONCLUSION.............................................................................................................................15

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

**TABLE OF AUTHORITIES**

**PAGE**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................3

*Capps v. JPMorgan Chase Bank, N.A.*,
2023 WL 3030990 (E.D. Cal. Apr. 21, 2023)..........................................................7

*Cheslow v. Ghirardelli Chocolate Co.*,
472 F. Supp. 3d 686 (N.D. Cal. 2020) ...............................................................13, 14

*Custom Commc'ns v. F.T.C*,
142 F.4th 1060 (8th Cir. 2025) ...............................................................................12

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ..................................................................................13

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ............................................................................13, 15

*F.T.C. v. Am. Future Sys., Inc.*,
2024 WL 1376026 (E.D. Pa. Mar. 29, 2024)......................................................14, 15

*F.T.C. v. Amazon.com, Inc.*,
735 F. Supp. 3d 1297 (W.D. Wash 2024)........................................................ passim

*F.T.C. v. D-Link Sys., Inc.*,
2017 WL 4150873 (N.D. Cal. Sept. 19, 2017) (Donato, J.) .....................................3

*F.T.C. v. DIRECTV, Inc.*,
2018 WL 3911196 (N.D. Cal. Aug. 16, 2018) ........................................3, 11, 13, 14

*F.T.C. v. Elec. Payment Sols. of Am. Inc.*,
2019 WL 4287298 (D. Ariz. Aug. 28, 2019)...........................................................15

*F.T.C. v. Swish Mktg.*,
2010 WL 653486 (N.D. Cal. Feb. 22, 2010) .......................................................4, 14

*F.T.C. v. Wellness Support Network*,
2014 WL 644749 (N.D. Cal. Feb. 19, 2014) ...........................................................13

*Fagerstrom v. Amazon.com, Inc.*,
141 F. Supp. 3d 1051 (S.D. Cal. 2015)................................................................9, 11

*Gershfield v. TeamViewer US, Inc.*,
2023 WL 334015 (9th Cir. Jan. 20, 2023) ................................................................4

*Gilberg v. Cal. Check Cashing Stores, LLC*,
913 F.3d 1169 (9th Cir. 2019) ..................................................................................4

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

*Godun v. JustAnswer, LLC*,
　135 F.4th 699 (9th Cir. 2025) ....................................................................................................9

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*,
　730 F.3d 494 (6th Cir. 2013) .....................................................................................................5

*Hall v. Time, Inc.*,
　857 Fed. App'x. 385 (9th Cir. 2021) ...........................................................................4, 11, 12

*In re Bassett*,
　285 F.3d 882 (9th Cir. 2002) .....................................................................................................5

*In re Vistaprint Corp Mktg. & Sales Litig.*,
　2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) ..........................................................................7

*Keebaugh v. Warner Bros Ent. Inc.*,
　100 F.4th 1005 (9th Cir. 2024) ............................................................................................8, 11

*Lerner & Rowe PC v. Brown Engstrand & Shely LLC*,
　119 F.4th 711 (9th Cir. 2024) ..................................................................................................14

*Leuthauser v. United States*,
　71 F.4th 1189 (9th Cir. 2023) ............................................................................................11, 12

*Luck v. McMahon*,
　2021 WL 4248887 (D. Conn. Sept. 17, 2021) .........................................................................15

*Nicosia v. Amazon.com, Inc.*,
　384 F. Supp. 3d 254 (E.D.N.Y. 2019) .......................................................................................5

*Oberstein v. Live Nation Ent., Inc.*,
　60 F.4th 505 (9th Cir. 2023) ...........................................................................................5, 7, 8, 9

*Perkins v. New York Times Co.*,
　2023 WL 3601489 (S.D.N.Y. May 23, 2023) .............................................................4, 7, 8, 11

*Peter v. DoorDash*,
　445 F. Supp. 3d 580 (N.D. Cal. 2020) .......................................................................................7

*Punchbowl, Inc. v. AJ Press LLC*,
　2024 WL 4005220 (C.D. Cal. Aug. 22, 2024)..........................................................................14

*Quamina v. JustAnswer, LLC*,
　721 F. Supp. 3d 1026 (N.D. Cal. 2024) ....................................................................................10

*Safeco Ins. Co. of Am. v. Burr*,
　551 U.S. 47 (2007)....................................................................................................................15

*Southwest Sunsites, Inc. v. F.T.C.*,
　785 F.2d 1431 (9th Cir. 1986) ..................................................................................................12

*U.S. v. Stratics Networks Inc.*,
　721 F. Supp. 3d 1080 (S.D. Cal. 2024).....................................................................................15

*United States v. Horvath*,
　492 F.3d 1075 (9th Cir. 2007) ..................................................................................................12

DEFENDANT JUSTANSWER LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-00333-JD

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

*Viveros v. Audible, Inc.*,
    2023 WL 6960281 (W.D. Wash. Oct. 20, 2023) ................................................................4, 7

*Walkingeagle v. Google, LLC*,
    2023 WL 3981334 (D. Or. June 12, 2023) ................................................................4, 7, 9

*William H. Morris Co. v. Group W*,
    66 F.3d 255 (9th Cir. 1995) ................................................................................................13

**STATUTES**

15 U.S.C. § 45 ................................................................................................................................15

15 U.S.C. § 53 ................................................................................................................................15

15 U.S.C. § 8403 ........................................................................................................................4, 11

**OTHER AUTHORITIES**

88 Fed. Reg. 24716 ........................................................................................................................12

89 Fed. Reg. 90476 ..................................................................................................................12, 15

91 Fed. Reg. 12318 ........................................................................................................................12

*FTC Policy Statment on Deception*, 103 F.T.C. 110 (1984)........................................................13

**RULES**

Fed. R. Civ. P. 8 ..............................................................................................................................3

Fed. R. Civ. P. 9 ..............................................................................................................................3

Fed. R. Civ. P. 12 ............................................................................................................................3

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

DEFENDANT JUSTANSWER LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-00333-JD

JustAnswer provides its members with 24/7 access to thousands of professional experts across a wide variety of fields, including medicine, veterinary, mechanics, and law. JustAnswer allows members to receive tailored, on-demand expert advice, all at a fraction of the usual cost and without traveling long distances in rural or underserved areas. Whether it be urgently needing a veterinarian in the middle of the night or deciding whether to make an expensive trip to a doctor or mechanic, JustAnswer makes experts affordable and accessible when customers need them the most. JustAnswer also ensures members know precisely what they are getting. JustAnswer does not deceive consumers: it clearly and conspicuously discloses membership terms and obtains customers' express informed consent before they sign up, and it provides customers with this information in multiple other ways at various points in their transactions.

Unable to ground its claims in ROSCA's plain language, the Complaint tries to construct a new narrative—one untethered to the statute and contradicted by its own Attachments. The Complaint baldly claims that "Defendants deceive consumers" into somehow believing that 24/7 access to thousands of professional experts costs only $1 or $5. Its attached screenshots show a different reality. They make clear: "By clicking 'Confirm now,' I agree … to be charged the one-time join fee above and a **$55 monthly** membership fee today and each month until I cancel" (Compl., Atts. B, D, F) (emphasis in originals), or "Unlimited conversations—one-time $1 join fee and **$50/month**. Cancel anytime," coupled with additional membership information. (Atts. H, J.) (emphasis in originals) This is not "limited information" as the Complaint alleges in a conclusory way. It is the precise membership and pricing terms the FTC claims reasonable consumers do not see, even though they are placed in critical locations with bolded terms and other highlights to make them stand out. These disclosures are better (often far better) than what courts have found meet the relevant standards. They defeat the FTC's claims as a matter of law.

***First***, the FTC pleads its ROSCA claims out of court. The Complaint makes clear that JustAnswer provides easily understandable and readily noticeable disclosures to all reasonable consumers, including through key context, critical placement, and multiple "attention-grabbing attributes." JustAnswer places its disclosures in the best possible location: right where customers input their payment information and press the sign-up button (plus other places too). As for context, JustAnswer sells one thing (a membership), and customers know just how costly expert services usually are, which makes them even more likely to notice the disclosures. JustAnswer further obtains customers' express informed consent, including by

1

specifically informing them that they are agreeing to the stated terms upon clicking the button. Under the statute's plain and unambiguous terms, JustAnswer does precisely what ROSCA requires.

Faced with this fatal pleading deficiency, the Complaint resorts to rewriting ROSCA. But it cannot save its claims by focusing on website pages irrelevant to the ROSCA analysis. Nor can it import additional requirements from a now-vacated FTC Rule to unilaterally expand the statute. In fact, this analysis is consistent with this Court's prior review of *nearly identical* JustAnswer disclosures.

*Second*, the FTC fails to plausibly plead the *probable* deception required for a Section 5 claim. The FTC cannot transform a commonly understood industry practice into something that is "likely to mislead," especially based on incomplete statistics that fail to plead the "significant minority" required.

*Finally*, the FTC's requested relief is unavailable. Civil penalties cannot be imposed for a Section 5 claim. For ROSCA, the FTC fails to plead the knowledge required. The FTC also fails to allege facts supporting its injunctive relief; nor does it make any well-pled allegations supporting claims based on websites not explicitly referenced in the Complaint. The Complaint should be dismissed with prejudice.

## BACKGROUND

JustAnswer connects consumers with experts in various fields. (Compl. ¶ 19.) Instead of having to pay for expensive expert services, users receive assistance "in minutes," 24 hours a day, 7 days a week. (Att. J.) Over 10 million people have used JustAnswer. (Att. I.) To join, a consumer pays both a one-time join fee and a monthly subscription fee. (Atts. B, D, F, H, J.) Consumers are only charged after inputting their payment information and pressing a prominent "Confirm Now" (or similar) button on a JustAnswer payment page (a "Payment Page"). (*Id.*) Consumers can easily cancel their monthly subscription. (*E.g.*, Atts. B, J.) Over the years, JustAnswer has consistently iterated and changed the language on its website, including the Payment Page. (Compl. ¶ 76.) But through its various Payment Pages, JustAnswer has clearly and conspicuously disclosed membership and pricing terms before consumers input their billing information and obtained consumers' express informed consent to these terms. (Atts. B, D, F, H, J.)

JustAnswer also provides membership information before consumers even reach the Payment Page. For example, JustAnswer's landing pages have informed consumers: "**Join and get it all. Cancel anytime. No commitments**" (Atts. A, C, E, G), "**Save monthly. Cancel anytime**" (Att. E), "**Only $33/month. Cancel anytime**" (Att. G), "**Unlimited chats, plus discounts on pet daycare, dog walking**

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

DEFENDANT JUSTANSWER LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-00333-JD

**& vet visits. Join for only $5. Cancel anytime**" (Atts. G, I), "**Your membership can save you time and money every time you use it**" (Att. G), or "**Low monthly price. Cancel anytime. No commitments**." (Att. I.) The landing pages also specifically inform customers of "**what's included**" in the membership. (Atts. A, B, E, G.) And the chatbot informs consumers they will be sent to the Payment Page to "join" JustAnswer. (Atts. B, D, F, H, J.) Membership and pricing information are also included in other parts of JustAnswer's website, such as its Terms of Service ("TOS") (Compl. ¶ 40), and the pricing page and FAQs.[1] Through these clear, repeated disclosures, JustAnswer provides consumers exactly what they need to know when signing up for a membership, so they can make an informed decision.

## LEGAL STANDARDS

For Fed. R. Civ. P. 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).[2] Because the FTC's claims are "rooted in allegations of false or misleading statements," they "sound in fraud and must meet Rule 9(b)[.]" *F.T.C. v. D-Link Sys., Inc.*, 2017 WL 4150873, at *2 (N.D. Cal. Sept. 19, 2017) (Donato, J.).

## ARGUMENT

**I.     The FTC Fails to Plead Claims as to Website Pages Not Identified in the Complaint**

Under either Rule 8 or 9(b), the FTC fails to state a claim for website pages not actually identified in the Complaint. By definition, the FTC cannot allege that website language is deceptive or not clear and conspicuous without alleging *something* about that language. *See F.T.C. v. DIRECTV, Inc.*, 2018 WL 3911196, at *16 (N.D. Cal. Aug. 16, 2018) (rejecting FTC's "assert[ion] that conclusions regarding one advertisement apply uniformly to tens of thousands of others"). But here, the FTC fails even this simple requirement. Despite recognizing that JustAnswer is constantly changing its website language (Compl. ¶ 76), the FTC has alleged *nothing* about any JustAnswer webpages not identified in the Complaint. The FTC's pronouncement that five proffered examples are "representative" of every single possible website

---

[1] (RJN at 1-3; Dwight Decl. Exs A-B (JustAnswer website pricing pages available in 2022 and 2025).)

[2] Pleading "facts that are 'merely consistent with' a defendant's liability … 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 679.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

iteration over a four-year period is not plausible and is accompanied by no supporting facts. (*Id.* ¶¶ 22, 85, 93, 96). Any claims based on any webpages not attached to the Complaint must be dismissed. *See F.T.C. v. Swish Mktg.*, 2010 WL 653486, at \*5 (N.D. Cal. Feb. 22, 2010) (refusing to credit the FTC's "conclusory assertions … untethered to virtually any supportive facts").

## II.    The FTC Fails to State a Claim That Defendants Violated ROSCA

ROSCA requires businesses selling services with negative option features to:

(1) "clearly and conspicuously" disclose all material terms of the transaction before obtaining the consumer's billing information;
(2) obtain a consumer's "express informed consent" before charging the consumer; and
(3) Provide a "simple mechanism" for consumers to stop recurring charges.[3]

15 U.S.C. § 8403. As the relevant inquiry is objective, the "court may grant a motion to dismiss based on its own examination of exhibits to a complaint when the material disclosures are plainly 'clear and conspicuous.'" *F.T.C. v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1317 (W.D. Wash 2024). In fact, courts regularly dismiss similar Automatic Renewal Law ("ARL") claims on 12(b)(6). *E.g., Hall v. Time, Inc.*, 857 Fed. App'x. 385, 386 (9th Cir. 2021) (dismissing based on plain text of the ARL).[4]

### A.    The FTC Does Not Plausibly Allege Defendants Failed to Clearly and Conspicuously Disclose Key Terms Before Obtaining Billing Information (Count II)

ROSCA does not define "clearly and conspicuously." *Amazon.com*, 735 F. Supp. 3d at 1314. Thus, courts look to plain and ordinary meaning: "clear" means "reasonably understandable" and "conspicuous" means "readily noticeable." *Gilberg*, 913 F.3d at 1176.[5] This focuses on the (a) "visual aspects of the notice," including "in relation to the other elements on the page," and (b) "context of the transaction."

---

[3] The Complaint does not allege that Defendants failed to provide a simple mechanism for cancelation under ROSCA's third prong, so JustAnswer does not address that prong here.

[4] *See also Gershfield v. TeamViewer US, Inc.*, 2023 WL 334015, at \*1 (9th Cir. Jan. 20, 2023) (defendant did not "plausibly plead a claim for any violation of California's [ARL]"); *Viveros v. Audible, Inc.*, 2023 WL 6960281, at \*7 (W.D. Wash. Oct. 20, 2023) (dismissing and finding disclosures clear and conspicuous and obtaining affirmative consent); *Walkingeagle v. Google, LLC*, 2023 WL 3981334, at \*3 (D. Or. June 12, 2023) (dismissing as a matter of law under the "reasonable consumer prism"); *Perkins v. New York Times Co.*, 2023 WL 3601489, at \*4 (S.D.N.Y. May 23, 2023) (dismissing and refusing to import "typeface and design elements into the definition of 'conspicuous' that the legislature opted not to incorporate"). "Clarity and conspicuousness" are also "questions of law" under TILA and the FCRA. *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1176 (9th Cir. 2019).

[5] Some ARLs (like California) provide definitions of "clear and conspicuous" that impose requirements beyond this plain meaning. *Amazon.com*, 735 F. Supp. 3d at 1315; *Perkins*, 2023 WL 3601489, at \*4 (refusing to import CA ARL requirements into a statute that did not define "clear and conspicuous"). Because ROSCA does not define these terms, California's ARL is actually stricter than ROSCA.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

*Amazon.com*, 735 F. Supp. 3d at 1316–17. No particular kind of formatting is "magical:" what matters is whether a reasonable person would actually see the disclosures. *Id.*; *In re Bassett*, 285 F.3d 882, 886 (9th Cir. 2002) (conspicuousness "ultimately turns" on what a "reasonable person would actually see").

Disclosures are analyzed "through the lens of a reasonable consumer" engaging in the specific internet transaction, including ordinary internet users familiar with e-commerce. *Amazon.com*, 735 F. Supp. 3d at 1319.[6] Under the "reasonable consumer" standard, a representation is ***not*** deceptive unless "it is likely to mislead consumers acting reasonably under the circumstances." *Id.* at 1315. Where a pleading shows a reasonable consumer would have seen and understood the disclosures, they cannot violate ROSCA. *Id.*; *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023) (finding conspicuous disclosures where "a reasonable user would have seen the notice and been able to locate the Terms").

Here, the FTC pleads itself out of court. The FTC claims JustAnswer fails to clearly and conspicuously disclose three "material terms of the transaction:" (1) the membership price; (2) "its auto-renewal provision," and (3) "the timing of the first subscription fee." (Compl. ¶ 93.) ***But the Payment Pages attached to the Complaint plainly and simply disclose each of these terms***. (Atts. B, D, F, H, J.) Both the visual aspects and context of these disclosures confirm that JustAnswer provided "reasonably understandable" and "readily noticeable" disclosures before obtaining consumers' billing information. Despite the Complaint's rhetoric, this is all ROSCA requires. It compels dismissal with prejudice.

### 1. *The Visual Aspects of JustAnswer's Disclosures Are Easily Understandable and Readily Noticeable to a Reasonable Consumer*

The Payment Pages attached to the Complaint prominently disclose the challenged pricing and membership terms in plain, easily understandable, and readily noticeable language. For example, in black, bolded lettering on a light grey background right above the "Confirm Now" button, Attachments B, D, and F explicitly and simply inform the user that they will "be charged the one-time join fee above, and **$55 monthly** membership today and each month until I cancel." (emphasis in original).

---

[6] *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 278 (E.D.N.Y. 2019), *aff'd*, 815 F. Appx. 612 (2d Cir. 2020) (Ordinary internet users "know that there are terms and conditions attached when they … order merchandise … not because a loud, brightly-colored notice on the screen tells them so, but because it would be difficult to exist in our technological society without some generalized awareness of the fact."); *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 509 (6th Cir. 2013) ("[T]he focus is on 'the typical buyer exercising ordinary caution,' not 'the most obtuse customer[.]'").

DEFENDANT JUSTANSWER LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-00333-JD



This language plainly discloses each of the terms identified by the FTC: (1) *Price*: a "one-time join fee" and a "**$55 monthly** membership;" (2) *Auto-renewal*: "**$55 monthly** membership fee today and each month until I cancel;" and (3) *Timing*: "today and each month until I cancel." (*Id.*) Attachments H and J do the same thing, making similar disclosures and *also* disclosing right above the payment field: "Unlimited conversations – one-time $1 join fee and **$50/month**. Cancel anytime." (emphasis in original).





DEFENDANT JUSTANSWER LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-00333-JD

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

These disclosures are clear, devoid of legalese, and easily understandable by any reasonable consumer. *In re Vistaprint Corp Mktg. & Sales Litig.*, 2009 WL 2884727, at *6 (S.D. Tex. Aug. 31, 2009) ("[t]he membership fee of $14.95 per month will be charged/debited … to the card you used today" was "clear and easily understandable by anyone capable of making an online purchase of business cards").

They also are readily noticeable. JustAnswer places its disclosures in an unmissable location: right between where consumers enter their payment information and the "Confirm now" button that finalizes the transaction. This placement right above the action button is precisely where a reasonable consumer is ***most likely*** to see the disclosure, and is one of the hallmarks of cases finding disclosures conspicuous as a matter of law.[7] The Payment Pages then repeat these disclosures, including in the TOS and, for certain Payment Pages, in bold at the top and side of the pages.[8] They plainly meet the "conspicuous" requirement. *Perkins*, 2023 WL 3601489, at *4 (dismissing and noting that no specific "design elements" are required).

This is especially true given JustAnswer's use of "attention-getting attributes" making its disclosures stand out even more. *Id.*, at *3. JustAnswer's disclosures are placed in contrasting colored boxes to enhance their visibility, and the page itself is free from unnecessary text. (Atts. B, D, F, H, J.) They also bold key membership and pricing terms (**$55 monthly**), highlighting precisely what consumers need to know.[9] Courts reviewing similar (or worse) disclosures have found them clear and conspicuous as a matter of law. *Walkingeagle*, 2023 WL 3981334, at *4 (disclosures clear and conspicuous where "key offer terms are featured in bold font, and a gray line divides the page to further demarcate the terms").[10]

"The Complaint does not plausibly allege why the automatic-renewal provision was not clearly

---

[7] *See Viveros*, 2023 WL 6960281, at *7 (disclosures appeared above the action button); *Walkingeagle*, 2023 WL 3981334, at *3–4 (disclosures located above and visually proximate to action button); *Oberstein*, 60 F.4th at 516 (notice was "displayed directly above or below action button"). *C.f. Amazon.com*, 735 F. Supp. 3d at 1320 (noting that in cases granting dismissal, "the disclosures appeared above the button that plaintiffs had to click," while "[i]n this case, the disclosures appeared below the button").

[8] (*E.g.*, Compl., Atts H, J) (stating "one-time $1 join fee and **$50/month**" at the top of the page and "**Membership Benefits**" in large bold letters off to the side). The Payment Pages also highlight membership terms in other places, stating "join JustAnswer" (Atts B, D, F), "Cancel anytime" (Atts D, F, H, J), and "Your membership can save you time & money every time you use it." (Att. F.)

[9] The Complaint also concedes that JustAnswer's mobile page "scrolls automatically" to the key disclosures, making them stand out to a reasonable consumer even more. (Compl. ¶ 39.)

[10] *Capps v. JPMorgan Chase Bank, N.A.*, 2023 WL 3030990, at *4 (E.D. Cal. Apr. 21, 2023) (notice was "conspicuously displayed directly above the 'Create Your Account' button and is in regular sized, bold font"); *Peter v. DoorDash*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) ("Despite Plaintiff's characterization of the font as gray-on-gray, the text contrasts clearly with the background and is plainly readable.").

7

DEFENDANT JUSTANSWER LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-00333-JD

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

and conspicuously presented and why its terms would not be obvious or plainly visible to a consumer." *Perkins*, 2023 WL 3601489, at *4. To the contrary, it **concedes** each of the critical design choices that doom its case. It concedes that the critical disclosures are "between the [credit card] form and the 'Confirm now' button." (Compl. ¶¶ 36, 39.)[11] It concedes that the "block of text" discloses membership and pricing, including **bolding** the monthly fee. (*Id.* ¶¶ 37–39.) It concedes that the TOS and Payment Pages provide **additional** price and membership disclosures. (*Id.* ¶¶ 40, 42.) This is more than sufficient for dismissal.

### 2.      Context Confirms JustAnswer's Disclosures Are Clear and Conspicuous

The "context of the transaction" confirms JustAnswer's disclosures are clear and conspicuous. *Amazon.com*, 735 F. Supp. 3d at 1316; *Keebaugh v. Warner Bros Ent. Inc.*, 100 F.4th 1005, 1019 (9th Cir. 2024) (same). **First**, JustAnswer sells only one product—a membership service. This critical context differentiates JustAnswer from other ROSCA cases—*i.e.*, *Amazon*—where a company slips a subscription into a non-subscription (and often, entirely unrelated) product. *Amazon.com*, 735 F. Supp. 3d at 1316–17. There, the consumer is less likely to "scrutiny[ize]" the disclosures, because they think they are buying soap, not a subscription. *Id.*; *Oberstein*, 60 F. 4th at 516. By contrast, here, "enrollment [is] not paired with another shopping experience," so reasonable consumers "contemplating a relationship with [JustAnswer]" would "be more likely to notice the terms." *Amazon.com*, 735 F. Supp. 3d at 1320.[12]

**Second**, reasonable consumers know expert services are generally costly and time-consuming. By contrast, JustAnswer offers 24/7 access to tailored, professional expert answers from their own home. No reasonable consumer would expect on-demand, concierge access to professional experts to cost a minimal join fee of $1 or $5. As such, they "would be more likely to notice" the bolded monthly membership price. *Id.* Given this crucial context and the critical placement and highlighting of JustAnswer's disclosures, **reasonable** consumers would notice and understand the membership and pricing information.

### B.      The FTC Does Not Adequately Allege that Defendants Failed to Obtain Consumers' Express Informed Consent Before Charging Them (Count III)

The FTC fails to plausibly allege JustAnswer did not obtain consumers' "express informed

---

[11] The Complaint calls this prominent placement "fine print." (Compl. ¶ 42.) This belies both common sense and the litany of cases finding it to be the best possible place for disclosures.

[12] Amazon's disclosures also (a) were on a **separate** webpage from its billing page and (b) appeared **below** the action button. *Id.* Here, JustAnswer's disclosures are different from Amazon's in **each** respect, making them far more like disclosures in cases **granting** motions to dismiss. *See id.*

8

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

consent" before charging them. Nor could it. ***First***, JustAnswer's disclosures are clear and conspicuous. *See supra* § II.A. "Given that a consumer is presented with the automatic renewal terms in a clear and conspicuous manner before having the option to start the [membership]," this likewise shows express informed consent. *Walkingeagle*, 2023 WL 3981334, at *5 (for ARL "affirmative consent" prong).

***Second***, "an unambiguous manifestation of assent" occurs when a website calls upon "the consumer [to] take[ ] some action, such as clicking a button or checking a box" after being told that "[b]y continuing past this page and clicking [the button], you agree to our Terms of Use." *Oberstein*, 60 F.4th at 515-16. Nearly all the attached Payment Pages inform the consumer that, "By clicking 'Confirm now,'" the user agrees to JustAnswer's membership terms and to be immediately charged both a one-time join fee and a monthly membership fee. (Compl., Atts. B, D, F, H.) This employs the ***precise*** language approved by the Ninth Circuit and is better than other disclosures upheld. *See Berman*, 30 F.4th at 858 (unambiguous assent easily could have been given "by including language such as 'By clicking the Continue >> button, you agree to the Terms & Conditions'"). The Complaint does not provide any reason (let alone a plausible one) why clicking the action button after being provided this language fails to provide express informed consent. *See Amazon.com*, 735 F. Supp. 3d at 1321–22.

While one Payment Page (Att. J) has slightly different language, it also obtains express informed consent. Unlike consent for unstated TOS, this Payment Page explicitly notifies consumers right at the top in bold: "Unlimited conversations—one-time $1 join fee and **$37/month**. Cancel anytime." (*Id.*) It then reiterates this disclosure ***two more times***: (1) right above the action button, stating: "I understand the membership renews automatically and will continue until I cancel," and (2), on the right side, stating: "**Membership Benefits**" in large, bolded font that again stands out. This is all ***in addition*** to hyperlinks to the TOS (which again contain pricing and membership information). (*Id.*) Given all these disclosures, it is implausible that consumers do not provide their express informed consent. *Walkingeagle*, 2023 WL 3981334, at *5;[13] *Amazon.com*, 735 F. Supp. 3d at 1316 (ROSCA does not require magic words).[14]

---

[13] *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1068 (S.D. Cal. 2015) (consent under state advertising and consumer protection law when "[t]he text [of the notice] is somewhat smaller than the text beneath it, but the hyperlink to the COUs is set off in blue-colored font").

[14] Apart from ROSCA being a different statute, the fact that the key terms were explicitly stated in the disclosure's text (as opposed to in unstated hyperlinks), distinguishes Attachment J from cases finding that similar hyperlinks (by themselves) did not provide unambiguous assent. *See, e.g.*, *Godun v.*

9

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

**C.      That JustAnswer's Payment Pages are Clear and Conspicuous and Obtain Express Informed Consent Is Consistent with this Court's Prior Ruling**

The Court's prior analysis confirms JustAnswer's disclosures are both clear and conspicuous and obtain express informed consent. In *Quamina v. JustAnswer, LLC*, 721 F. Supp. 3d 1026, 1039 (N.D. Cal. 2024), the Court analyzed certain JustAnswer Payment Pages in the arbitration context to determine if the user "[a] received 'reasonably conspicuous notice' of the agreement and [b] exhibited 'an unambiguous manifestation of assent'" to JustAnswer's TOS. *Id.* at 1037. The Court found both prongs satisfied for a Payment Page nearly *identical* to Attachment H in this case. (*Compare id.* at 1033–34 (Pettit Payment Page) *with* Compl. Att. H.) The TOS language was conspicuousness because "the TOS link was directly above the sign-up button, underlined, and set in 'bright blue font.'" *Id.* at 1039. It also obtained unambiguous assent: "The text above the sign-up button expressly warned that by clicking 'Confirm now,' Pettit would agree to the TOS, and by doing so, she unambiguously manifested her assent." *Id.*

The result is the same under ROSCA. Attachment H (**which the FTC concedes was put in place around October 2022**) contains precisely the same disclosure, which satisfies similar ROSCA requirements. *See Amazon.com*, 735 F. Supp. 3d at 1316–21 (relying on the same internet contract cases as *Quamina*). The Payment Page provides clear and conspicuous disclosures and obtains express informed consent in two separate ways: (1) as in *Quamina*, through its TOS, explicitly including key pricing and membership information, and (2) explicitly informing consumers of the specific terms in the disclosure itself (*i.e.*, **"$50/month"**). (Att. H.) JustAnswer's later disclosures are equally clear. (Atts. B, D, F.) ("By clicking 'Confirm now' I agree to … be charged the one-time join fee, and a **$47 monthly** membership fee today and each month until I cancel.") These disclosures are "directly above the sign-up button" with key information bolded, and "expressly warn[ ]" users that they agree by "clicking 'Confirm now.'" *See Quamina*, 721 F. Supp. 3d at 1039. They are clear and conspicuous and obtain express informed consent.

**D.      The FTC Does Not Have Authority to Rewrite ROSCA**

Likely recognizing that JustAnswer's Payment Pages (1) clearly and conspicuously disclose membership and pricing and (2) obtain express informed consent, the Complaint tries to rewrite ROSCA.

---

*JustAnswer, LLC*, 135 F.4th 699, 713 (9th Cir. 2025). But even in the arbitration context, the Ninth Circuit has questioned its prior authority. *See id.* at 715 (Nelson, J. concurring) ("[W]e have committed to an erroneous doctrinal path" by "demand[ing] magic words—or, at least, … com[ing] very close.").

DEFENDANT JUSTANSWER LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-00333-JD

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

"'[I]n interpreting a statute[,] a court should always turn first to one, cardinal canon before all others'— 'presum[ing] that a legislature says in a statute what it means and means in a statute what it says there.'" *Hall*, 857 F. App'x at 386; *Leuthauser v. United States*, 71 F.4th 1189, 1195 (9th Cir. 2023) (noting "the high bar to 'justify … departing from the plain meaning' of the proviso"). Here, the FTC tries to (a) add font and formatting requirements that divorce ROSCA from its plain meaning, and (b) expand the statute to include *every* disclosure made *at any point* in time during the customer's experience (even at pages of the flow prior to the Payment Page). These efforts to expand the statute beyond its plain terms must fail.

*First*, the Complaint alleges JustAnswer's disclosures are in "substantially smaller print." (Compl. ¶ 38.) The Complaint's attachments show this is wrong. The disclosures' size and font mimic other text on the Payment Page, including the headings identifying the various payment fields.[15] But more fundamentally, ***ROSCA contains no font requirements***. To the contrary, font need not be the same size so long as other design elements make the disclosures clear and conspicuous. *See Amazon.com*, 735 F. Supp. 3d at 1316; *Keebaugh*, 100 F.4th at 1021 (reversing and finding terms conspicuous even when they were in significantly smaller font *not* bolded).[16] Holding otherwise would read "certain typeface and design elements into the definition of 'conspicuous' that the legislature opted not to incorporate," thereby "go[ing] beyond the word's plain and ordinary meaning[.]" *Perkins*, 2023 WL 3601489, at *4.[17]

*Second*, the Complaint focuses on JustAnswer search ads and "Landing Pages" (Compl. ¶¶ 23–34). These are irrelevant to a ROSCA analysis.[18] ROSCA is unambiguous: clear and conspicuous disclosures need only be made "before obtaining the consumer's billing information" and express informed consent obtained "before charging the consumer[ ]." 15 U.S.C. § 8403(1),(2). Here, the statutory

---

[15] This also ignores how a reasonable consumer actually views these disclosures—*i.e.*, on their desktop computer in a far larger size or on their mobile phone, just a few inches from their face. The blurry screenshots shown in the Complaint are not how consumers actually see JustAnswer's Payment Page.

[16] *See also DIRECTV*, 2018 WL 3911196, at *9 (text in a disclosure box stood out visually where it was bolded, even when in smaller font than other text in the advertisement); *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1069 (S.D. Cal. 2015) (disclosures conspicuous even when in smaller font than surrounding text because it was directly adjacent to action button and in a contrasting color).

[17] The *Perkins* court refused to add any specific font requirements to an ARL statute, which, like ROSCA, does not define "clear and conspicuous." *Id.* The court *rejected* the argument (like the FTC's) that "the automatic-renewal term is not 'clearly and conspicuously' displayed because it is not presented in an offsetting size, color or font from the surrounding text, and therefore is 'easily overlooked.'" *Id.*

[18] As discussed below, the Complaint also fails to allege that these pages are false or misleading, especially given that they *do* provide critical information concerning membership and pricing. *See supra* § II.

11

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

requirements are met on JustAnswer's Payment Pages. *See supra* § II.[19] This ends the ROSCA analysis.

Congress expressly limited ROSCA to a single clear and conspicuous disclosure made before obtaining the customer's billing information and to obtaining express informed consent a single time before charging the customer. By focusing on earlier-in-time search ads, Landing Pages, and chatbot communications, the Complaint effectively expands ROSCA to include **every** disclosure made **at any point** in time during the customer's experience. The FTC may wish ROSCA did more. But it lacks the authority "to rewrite the statute and impose a requirement that is absent from its text." *Hall*, 857 F. App'x at 387 ("Had the legislature intended to require a consumer's affirmative consent to the automatic renewal terms specifically, it could have omitted the words 'the agreement containing' from the provision.").[20]

The FTC itself has recognized ROSCA is inadequate to meet its enforcement agenda. *See* 88 Fed. Reg. 24716, 24718 ("ROSCA, however, does not prescribe specific steps marketers must follow to comply with these provisions."). This is why the FTC proposed the now-vacated Negative Option Rule, adding an entirely new "Misrepresentations" section and a host of new requirements for the "Form and Content" and "Placement" of disclosures that are all absent from ROSCA. *See* 89 Fed. Reg. 90476, 90538.[21] These vacated requirements mirror what the FTC tries to import through its Complaint. (*Compare id. with* Compl. ¶¶ 36–43.) The FTC recently issued an Advanced Notice of Proposed Rulemaking seeking to revise the Negative Option Rule a **second** time. 91 Fed. Reg. 12318. JustAnswer will of course follow any applicable Rule if it becomes law. But until then, the FTC cannot expand ROSCA to short-circuit the rulemaking process or to otherwise manufacture liability where none exists.

**III.    The FTC's Section 5 Count Fails to Plausibly Allege Deception (Count I)**

To assert a Section 5 claim, "the FTC must show probable, not possible, deception (*likely* to mislead, not *tendency and capacity* to mislead)." *Southwest Sunsites, Inc. v. F.T.C.*, 785 F.2d 1431, 1436

---

[19] Tellingly, ROSCA and similar ARL cases all focus on the payment pages where the applicable disclosures are located. *E.g.*, *Amazon.com*, 735 F. Supp. 3d at 1319. Other pages earlier in time (*i.e.*, a Google ad or landing page) are irrelevant to the ROSCA analysis.

[20] *See also Leuthauser*, 71 F.4th at 1195 ("Congress could have limited *investigative or law enforcement officer* to the criminal context, as it did explicitly in the ECPA and FTSA, but it excluded such limiting language from the proviso.") (italics in original); *United States v. Horvath*, 492 F.3d 1075, 1081 (9th Cir. 2007) ("[W]e may not add to the statute terms that Congress omitted.").

[21] The Eighth Circuit vacated the FTC's revisions to the Negative Option Rule on July 8, 2025. *Custom Commc'ns v. F.T.C*, 142 F.4th 1060, 1075 (8th Cir. 2025).

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

DEFENDANT JUSTANSWER LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-00333-JD

(9th Cir. 1986) (emphasis in original). "The FTC can prove that a representation is likely to mislead consumers by establishing either 1) actual falsity of express or implied claim or 2) that the advertiser lacked a reasonable basis … for asserting that the message was true." *F.T.C. v. Wellness Support Network*, 2014 WL 644749, at *15 (N.D. Cal. Feb. 19, 2014) (cleaned up). The FTC's pleading fails this test.

The FTC alleges JustAnswer "misrepresent[s] that consumers can join JustAnswer's question-and-answer service by paying a nominal one-time fee." (Compl. ¶ 23.) But paying a join fee to join JustAnswer is not a misrepresentation. It is a fact and is 100% true. Consumers *do* "join JustAnswer's question-and-answer service for $1 or $5.*"* (*Id*. ¶ 30.) Thus, the FTC cannot plausibly allege either "actual falsity" or that JustAnswer "lacked a reasonable basis for asserting that the message [is] true." *Wellness Support Network*, 2014 WL 644749, at *15. The Complaint nevertheless contends JustAnswer's practices "mislead[] consumers." (Compl. ¶ 22.) Tellingly, it never alleges that JustAnswer misleads *reasonable* consumers. *DirecTV, Inc.*, 2018 WL 3911196, at *5 (The "reasonable consumer" standard governs whether a "representation is likely to mislead[.]").[22] "[T]he reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). Single digit percentages of customer confusion fail this standard. *E.g.*, *Cheslow v. Ghirardelli Chocolate Co.*, 472 F. Supp. 3d 686, 693, 696 (N.D. Cal. 2020) (8% of consumers misunderstanding packaging was insufficient to find that a "reasonable consumer" would be deceived).[23]

*Reasonable* consumers understand the difference between a one-time "join fee" and a monthly "membership fee." This is a common practice employed by gyms, subscription boxes, software and digital services, telecommunications services, car rental subscription services, and online dating apps, to name just a few. The FTC cannot alter a common membership structure across a host of industries by baldly claiming that reasonable consumers must be misled when businesses charge join fees. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 (9th Cir. 2014) ("Something more" must be pled

---

[22] *See also FTC Policy Statement on Deception,* 103 F.T.C. 110, 175 (1984) ("A representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed.").

[23] *William H. Morris Co. v. Group W*, 66 F.3d 255, 258 (9th Cir. 1995) (less than 3% of consumers misled not a "significant portion").

DEFENDANT JUSTANSWER LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-00333-JD

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

in the face of likely "alternative explanations[.]").[24] This is especially true here, where JustAnswer repeatedly provides key information concerning its membership and pricing. *See supra* § II.A.

The Complaint alleges that "Defendants received more than 679,000 complaints" between February 2020 and July 2024. (Compl. ¶ 5.) But "[i]nstances of actual confusion present[ing] a numerator with no denominator, say[] little or nothing about the actual proportion of the consumer population that is confused." *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 720 (9th Cir. 2024). Because the Complaint does not provide the far larger number of JustAnswer subscribers during this same time period (the denominator), the Court cannot infer the percentage of subscribers who were purportedly confused. Without this information, the Complaint fails to plausibly allege that reasonable consumers—as opposed to an unreasonable minority—were confused.[25] *See Cheslow*, 472 F. Supp. 3d at 693, 696.

The same is true for the few cherry-picked complaints and truncated statements identified. (Compl. ¶¶ 48–49 (alleging four complainants).) Less than half a dozen individual complainants does nothing to plausibly allege that the millions who used JustAnswer were in any way deceived. (*See* Att. C at 12 ("**Over 10 million people helped**")); *Punchbowl, Inc. v. AJ Press LLC*, 2024 WL 4005220, at *11 (C.D. Cal. Aug. 22, 2024) ("100 instances of confusion" among "thousands" was "insignificant."). In "any business, some customer complaints are expected." *F.T.C. v. Am. Future Sys., Inc.*, 2024 WL 1376026, at *21 (E.D. Pa. Mar. 29, 2024). Given the size of JustAnswer's customer base, it would be remarkable if there ***weren't*** thousands of complaints. But this does not plead the "significant minority" required.[26]

## IV.    The FTC Fails To Plausibly Allege that Civil Penalties Are Warranted

Because the FTC has not alleged a cognizable ROSCA violation, civil penalties are not warranted. Civil penalties are only permitted where a defendant violates the FTC Act "with actual knowledge or

---

[24] The FTC may argue that some consumers use JustAnswer only once. But even if true, that does not allow the FTC to expand its authority by mandating how businesses employ legitimate practices to structure their business, especially here, where consumers may simply cancel after receiving their answer.

[25] The FTC has access to this information through its investigation. That it did not allege these much larger numbers is telling. *See Swish*, 2010 WL 653486, at *6. Further, even the 679,000 complaints alleged is misleading, given that the FTC only attaches webpages going back to 2022, not 2020.

[26] Statements of individual JustAnswer employees fare no better. An email or text message from a customer service agent whose entire day is spent dealing with complaints from a small percentage of customers (Compl. ¶¶ 53–55) is not representative of JustAnswer's entire customer base. *DIRECTV*, 2018 WL 3911196, at *18 ("DIRECTV's investment of substantial resources in analyzing its operations, candidly identifying areas for improvement, and following through on a number of improvements does not support a finding that the company violated the FTC Act.").

14

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule." 15 U.S.C. § 45(m)(1)(A).[27] "The Supreme Court has suggested this provision allows for a mistake-of-law defense to civil liability such that a defendant is not liable where it … would not reasonably have known its conduct was unlawful." *U.S. v. Stratics Networks Inc.*, 721 F. Supp. 3d 1080, 1100 (S.D. Cal. 2024) (citations omitted).

The Complaint cannot plead such knowledge.[28] The FTC essentially alleges JustAnswer (a) has engaged in membership marketing for years, and (b) has extensive legal resources with expertise in ROSCA. But this ignores the obvious alternative: JustAnswer has worked in good faith to comply with the law as it understands it. *Eclectic Props*, 751 F.3d at 999; *Luck v. McMahon*, 2021 WL 4248887, at *14 (D. Conn. Sept. 17, 2021) (refusing an "inference that Defendants [acted] for a dishonest purpose" based on allegation that defendants "sought the advice of their attorneys"). Here, there are certainly reasonable views of ROSCA that are inconsistent with the Complaint's interpretation. *See supra* § II.

Further, the Complaint points to no FTC guidance or prior case law adopting its interpretation of ROSCA. There is none. "Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing … violator." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007). Given the FTC's own acknowledgment of ROSCA's ambiguity, it cannot plausibly show that JustAnswer's good-faith compliance allows for civil penalties. 89 FR 90476, 90479.[29]

**V.     The FTC is Not Entitled to Injunctive Relief**

The FTC has failed to plausibly allege any underlying statutory violation. Injunctive relief is unwarranted. 15 U.S.C. § 53(b); *F.T.C. v. Elec. Payment Sols. of Am. Inc.*, 2019 WL 4287298, at *9 n.6 (D. Ariz. Aug. 28, 2019) (FTC must plausibly allege that a violation is occurring or likely to recur).

<strong>CONCLUSION</strong>

The Court should dismiss the Complaint, in full and with prejudice.

---

[27] A pure Section 5 violation does not allow for civil penalties. *See generally* 15 U.S.C. § 45.

[28] This is especially true given the heightened 9(b) standard required. *See Supra* (Legal Standards).

[29] Nor is it enough that some small percentage of customers complained about being confused. Cases finding "knowledge fairly implied" typically involve direct regulatory warnings or explicit notice of legal requirements. *E.g., Am. Future Sys.*, 2024 WL 1376026, at *21. This has not been alleged here.

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

Respectfully submitted,

Dated: March 16, 2026                MANATT, PHELPS & PHILLIPS, LLP

By:  */s/ Kevin Dwight*
     Kevin Dwight
     Bezalel Stern (*pro hac vice*)
     Joshua N. Drian (*pro hac vice* to be filed)

     *Counsel for Defendant JustAnswer LLC*

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
REDWOOD CITY, CA

16
DEFENDANT JUSTANSWER LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-00333-JD